**E. J. HENRY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. WC6436.**

United States District Court
N. D. Mississippi, W. D.
Dec. 29, 1965.

Carothers & Fedric, Grenada, Miss., Will Lewis, Jr., Ethridge & Grisham, Oxford, Miss., for plaintiff.

H. M. Ray, U. S. Atty., Oxford, Miss., for defendant.

CLAYTON, District Judge.

This is a suit brought by E. J. Henry as plaintiff under the Tucker Act (28 U.S.C. § 1346(a) (2)). The case was tried to the court and is for disposition on briefs of the parties. The facts, which are not in material dispute, will be stated as this court finds them to be.

Plaintiff undertook by a written contract dated June 9, 1962, to construct an extension to and a renovation of the existing United States Post Office in Grenada, Mississippi, in accordance with certain specifications, plans, and drawings furnished by defendant. The consideration for the contract as originally executed was $194,959.00. Because of unforeseen difficulties encountered in the execution of the contract, it was amended by a change order dated November 9, 1962, which provided an additional consideration in the amount of $6,395.55.

Plaintiff began construction under the original contract on July 10, 1962, and proceeded with the work contemplated thereby until July 23, 1962, when he encountered two brick storm sewer lines, approximately 36 inches in width, while excavation in the area to be used for the basement of the extension to the post office was underway. These sewer lines were approximately five feet beneath the surface of the existing grade and traversed the complete length of the then specified basement area.

The letting of this contract was handled for the United States by General Services Administration, and it is without dispute that neither plaintiff nor General Services Administration knew of the existence of the aforementioned sewer lines until they were discovered as aforesaid. However, it is also without dispute that another department of the United States had known of the existence of these sewer lines and had issued a license or permit for their construction. Correspondence and documents showing this to be so were available to General Services Administration, but these were not discovered until after plaintiff had encountered the sewer lines while excavating as aforementioned.

When plaintiff located these sewer lines, he immediately notified defendant's architect of this discovery and was directed by the architect to suspend construction until such time as a decision was made by General Services Administration as to what was to be done. Accordingly, plaintiff suspended all con-

struction on the site at the close of the working day of July 23, 1962, to await contract modifications from defendant.

Thereafter, on July 26, 1962, plaintiff notified General Services Administration in writing of the impediment to construction and that he had ceased work. On that same day, the architect wrote General Services Administration, giving the results of his on-site inspection of the sewers made on July 25, 1962.

During the 111 day period while work was suspended, personnel of the Post Office Department were still working in the building, which had been partly demolished in connection with the original contract work, and plaintiff diligently saw to it that the necessary work of the Post Office Department could proceed and diligently protected the building and construction site. Daily inspections were made and pumps were operated to remove rain and surface drainage water from the excavation. Temporary coverings on windows which had been removed were maintained, and all reasonable measures were followed to diminish the daily costs which were accruing at the construction site. Certain necessary and proper expenses were incurred and paid by the plaintiff which were not included in the payment made to him on the original contract or as a result of the aforesaid change order.

During this suspension interim, plaintiff repeatedly requested in writing that defendant make a decision as to the modification in the plans and specifications made necessary by the storm sewers and repeatedly reminded defendant that the suspension or delay in construction was causing plaintiff considerable expense which was not in contemplation of the parties when the original contract was made. He also called defendant's attention to the fact that much favorable construction weather was being lost during this delay.

When plaintiff received authority to recommence construction on November 10, 1962, under the revised plans and specifications, he promptly commenced work on Monday, November 12, 1962,

and completed the construction in accordance with the original contract as amended by the change order. The stated consideration for each of these projects— the original construction and as changed —was paid to plaintiff after the work contemplated thereby had been completed.

During the period when construction was suspended, as aforementioned, plaintiff presented to defendant's contracting officer notice of the daily losses and expenses which he was incurring due to the delay and formally demanded payment therefor. Shortly after construction had been resumed and at the request of the contracting officer, plaintiff resubmitted an itemization of daily losses and expenses occasioned by the delay and again formally demanded payment. In February 1963, payment of these demands was finally refused by the contracting officer and plaintiff appealed from that decision to the Administrator of General Services of the General Services Administration, but on or about July 31, 1963, this appeal was dismissed by the Board of Contract Appeals of General Services Administration on jurisdictional grounds. Thus plaintiff has exhausted his administrative remedies, making this suit maintainable.

Prior to the letting of the original contract, defendant had made no soil tests at this construction site and the contract documents did not require plaintiff to make any soil tests. He did, however, as is customary, made an on-site visual surface inspection before tendering his bid which was successful.

It has been held that one department of the United States is not chargeable with notice of information in the hands of another department. S. T. G. Construction Company, Inc., v. United States, 157 Ct.Cl. 409 (1962). In that case, inter alia, the court said:

> To attribute knowledge to one agency of information contained in the files of another governmental department is absurd, in the light of the vast number of federal departments, bureaus, and agencies, and

the tons of papers contained in the files of each. (Citing cases.)

Thus, it must be said that defendant, acting here through General Services Administration, was not charged with knowledge obtained by another department about the existence of these sewers at a time when said other department was exercising control for defendant over the said post office property.

Had these subsurface conditions, which were not known to either of the contracting parties, not been encountered, it appears clearly that plaintiff would have proceeded to the completion of the original contract with dispatch and within the time originally contemplated. It is equally clear that the work, as originally contemplated by the parties, could not proceed to completion after the sewers were discovered. This brought into play Clause 4 of the original contract which provides that if subsurface conditions are found differing materially from those ordinarily encountered, the "Contracting Officer shall promptly investigate the conditions, and if he finds that such conditions do so materially differ and cause an increase or decrease in the Contractor's cost of, *or the time required for,* performance of this contract, an equitable adjustment shall be made and the contract modified in writing accordingly." (Emphasis added).

It is to be noted that the aforementioned contract provision required that the Contracting Officer "shall promptly investigate the conditions" and this court is unable to say that a delay of 111 days was such prompt action as was contemplated by the parties to the original contract. In fact, the court must say that this was an unreasonable delay and defendant should be required to make plaintiff whole for his aforementioned necessary expenses incurred by him for the protection of the interests of defendant.

All of the claimed items of expense which are apportioned by plaintiff between the work with which we are here concerned and other work being done by him are reasonable and proper charges against defendant in this situation and all items charged alone to this project are reasonable and proper, with the exception of the item of anticipated profit claimed by plaintiff at the rate of $56.67 a day. To allow plaintiff this claim would be to speculate and conjecture, which is impermissible in this situation, and it is to be noted that profit was written into both the original contract and the aforesaid change order.

The daily total of the permissible items, reducing item 9 in accordance with plaintiff's testimony (Builders Risk Insurance per day) to $1.32 leaves an allowable daily total properly payable by defendant for the 111 days of delay of $21.51.

Plaintiff, therefore, is entitled to recover from defendant on this suit the total sum of $2387.61 for which amount judgment will be entered and for costs.